# In the United States Court of Federal Claims

No. 21-1885C
Filed: June 17, 2022

---

**FELIX O. GONZALES, JR.,**

*Plaintiff,*

**v.**

**THE UNITED STATES,**

*Defendant.*

---

*Brian D. Schenk*, Midwest Military & Veterans Law, PLLC, Minneapolis, Minnesota, for Plaintiff.

*Joshua A. Mandlebaum*, Trial Attorney, *L. Misha Prehem*, Assistant Director, *Patricia M. McCarthy*, Director, Commercial Litigation Branch, *Brian M. Boynton*, Acting Assistant Attorney General, Civil Division, U.S. Department of Justice, Washington, D.C., with *John Haberland*, Major, Judge Advocate General's Corps, Of Counsel, for Defendant.

## MEMORANDUM OPINION AND ORDER

**TAPP, Judge.**

Allegations of misconduct by Army personnel trigger a host of investigative and disciplinary procedures. For Plaintiff, United States Army Major Gonzales (ret.),[1] an informal investigation, referred to as a "15-6 investigation," resulted in the inclusion of a negative officer evaluation report in his files. After the 15-6 investigation, an Army Board of Inquiry ("BOI") was formed to decide whether Major Gonzales should be retained. That Board disagreed with the 15-6 investigation's findings and decided to retain him in service.

Years later, after the Army relied on the negative report in adopting a lower retirement grade for Major Gonzales, he asked the Army Board for Correction of Military Records ("BCMR") to set aside that decision, alleging that the BOI had absolved him of the misconduct that formed the basis of the negative report. BCMR denied. The question before the BCMR and before the Court now is whether the Army validly relied on the negative report in determining Major Gonzales's retirement grade, even when the BOI, in deciding to retain Major Gonzales, called into question the 15-6 investigation's findings. Because the Court finds that BOIs are not

---

[1] The Court will refer to Plaintiff as Major Gonzales because that is currently his official, though disputed, retirement rank.

vested, by regulation, with the power to absolve officers of misconduct otherwise established through a 15-6 investigation, it sustains the BCMR's decision.

Accordingly, the Court **GRANTS** the United States' motion for judgment on the administrative record and **DENIES** Major Gonzales's cross-motion for judgment on the administrative record.

## I.   Background

Allegations of misconduct by Army officers can trigger a circuitous set of procedures: from investigating the alleged misconduct and issuing findings, deciding the immediate impact of such the findings, to determining whether the findings shall be recorded in service members' files, and assessing the impact of negative reports on immediate and future service. Each of these actions can be overseen by distinct administrative bodies with varying levels of authority and jurisdiction, different mandates, and different structures.[2] In this case, misconduct allegations arose out of Major Gonzales's time of service in Bogotá, Colombia where he served in support of joint counter-drug and human rights operations related to Plan Colombia. (Administrative Record ("AR") 1008–09, 1018, ECF No. 10).

Major Gonzales began active duty with the Army in December of 1991. (AR 292, 1843). He achieved the rank of lieutenant colonel in 2009 and retired in 2015. (*Id.*). Prior to leaving the service, the Army adjusted Major Gonzales's rank based on an investigation into his personal conduct in Colombia. (AR 1843–45). The investigation into Major Gonzales's conduct began in 2011 when his wife notified Army supervisors of recent threatening behavior. (AR 642, 645).

The Army's inquiry into Major Gonzales's conduct triggered this sequence of administrative procedures: An army officer conducted an on-the-ground informal investigation (referred to as a "15-6 investigation") into Major Gonzales's conduct in Colombia and issued a report with adverse findings.[3] (AR 585–94). After reviewing the 15-6 investigation's findings and recommendations, Major Gonzales's supervisors issued a negative report (also known as negative officer evaluation report or an "OER") and included it in his official files. (AR 4–5).

Major Gonzales appealed that decision to the Officer Special Review Board ("OSRB"), the body responsible for correcting files that may reflect substantive inaccuracy or injustice. (AR 1–3); *see also* Army. Reg. 623-3, ¶ 6-11(a)(2) (Aug. 10, 2007). OSRB denied the appeal. (AR 946). While that OSRB appeal was pending, the investigation and the negative report triggered a Board of Inquiry to determine whether Major Gonzales should be retained in the service; the BOI decided to retain him, importantly, disagreeing with the 15-6 investigation's findings. (AR 152–3, 305–7); *see also* Army Reg. 600-8-24, ¶¶ 4-6(a) (Apr. 12, 2006) ("The Board of Inquiry's purpose is to give the officer a fair and impartial hearing determining if the officer will

---

[2] For example, informal investigations may "be conducted before, concurrently with, or after an investigation into the same or related matters." Army Reg. 15-6. ¶ 1-5(d) (Oct. 2, 2016).

[3] This procedure is derived from Army Regulation 15-6, which is primarily directed at informal investigations.

be retained in the Army."), ¶ 4-15(b)(3) ("The [BOI] recommendations are limited to either retention [] or elimination.").[4]

After the BOI's decision, Major Gonzales sought reconsideration from the OSRB for the second time, this time arguing that the BOI decision had "absolved" him of misconduct. (AR 122–30). The OSRB denied relief again and decided not to remove the negative report from Major Gonzales's files. (AR 127–29). Major Gonzales also appealed that decision to the BCMR to reverse the OSRB's decisions and remove the negative report. (AR 131–35, 249–67). The BCMR also sustained the OSRB's decision. (*Id.*).

When Major Gonzales decided to retire in 2015, an Army Grade Determination Review Board ("AGDRB") convened to determine his retirement rank because the negative report had remained in his official files.[5] (AR 288). The AGDRB determined that Major Gonzales could not retire at the rank of lieutenant colonel, as the misconduct and negative report took place while he served in that role, instead adjusting his rank to major. (AR 913–14). In light of the AGDRB's determination, Major Gonzales sought reconsideration from the BCMR yet again, asking the Board to reconsider its earlier decision sustaining the negative report and to adjust his retired grade. (AR 895–903). After the BCMR denied his request once again, Major Gonzales challenged that decision in this Court. (AR 952).

The Army conducted the initial 15-6 investigation that preceded this cavalcade of administrative proceedings to discover if Major Gonzales had violated the Uniform Code of Military Justice ("UCMJ") and Army policies by: (1) committing adultery, (2) engaging in an inappropriate relationship with a Colombian national, and (3) sexually harassing his family's nanny. (AR 597–98). By the investigator's own admission, that investigation was not without its hurdles. (AR 402). For one thing, Mrs. Gonzales did not fully cooperate with the investigating officer, even refusing to share relevant records of telephone calls, emails, and text messages that she had previously shared with the United States Military Group in Colombia to substantiate Major Gonzales's misconduct. (*Id.*). Others at the center of the story refused to speak in detail on the record, including the Gonzales family's nanny (who Major Gonzales was accused of sexually harassing) and Ms. G. (the female Colombian national who Major Gonzales allegedly had a long-term inappropriate relationship with). (AR 403–4). The investigating officer attributed this lack of forthrightness, in some part, to pressures exerted by Major Gonzales. (AR 402, 405, 821–22). Regardless of these barriers to the investigation, the investigating officer found "sufficient evidence" that Major Gonzales "engaged in a long-term inappropriate relationship" with Ms. G., and that this behavior "fail[ed] to meet acceptable moral standards." (AR 403–4). Major Gonzales's failure to report this close relationship, the investigating officer noted, was also in violation of "existing General Order" and "current Army Regulation." (*Id.*). The investigating officer also found "sufficient evidence" that Major Gonzales committed assault consummated by battery against his wife in violation of Article 128 of UCMJ. (AR 406–7). The investigating

---

[4] A board of inquiry is an involuntary separation board for commissioned Army officers. *See generally* Army Reg. 600-8-24, Chapter 4, Eliminations.

[5] The AGDRB determines the highest rank in which personnel served satisfactorily for purposes of retirement or other separation. *See* Army Reg. 15-80, ¶ 4-1(d) (July 12, 2002).

officer also found "sufficient evidence" to conclude that Major Gonzales willfully disobeyed superior commissioned officers when he initiated communications with parties involved in the investigation about the ongoing investigation in contravention of a protective order issued by his superiors. (AR 407). The 15-6 investigation also concluded that, in associating with Ms. G., Major Gonzales had stayed overnight at unapproved locations on a few occasions, thereby violating curfew rules imposed by U.S. Military Group Colombia General Order #1 that required all activities to be restricted to inside U.S. Government approved residences and hotel rooms. (AR 409, 855). The investigation also found sufficient evidence that Major Gonzales had extorted the family driver to prevent him from talking to investigators about Major Gonzales's relationship with Ms. G. (AR 408–10).

The 15-6 investigation did not substantiate two of the misconduct allegations. (AR 403–5). First, it did not find sufficient evidence of adultery because there was no specific evidence of sexual intercourse between Major Gonzales and Ms. G. (*Id.*). The report explained that even though Ms. G. denied having a sexual relationship, the investigating officer found her credibility lacking because of her "defensive" attitude and her seemingly pre-rehearsed answers. (*Id.*). Second, the report also found insufficient evidence to establish that Major Gonzales sexually assaulted the family's nanny. (*Id.*). The investigator expounded that had the purported victim (the family's nanny) agreed to talk more openly to the investigator and had Ms. G. been more forthright in sharing text message records and audio recordings discussing the incident—records that had allegedly previously been shared with others—the assault could have been potentially corroborated. (*Id.*)

The 15-6 investigation's findings recommended that Major Gonzales receive a general officer letter of reprimand. (AR 410). After reviewing the 15-6 findings, Major Gonzales's supervisors concluded he had failed to display the Army value of "integrity." (AR 4). The negative report culminating from this review stated that Major Gonzales's "personal integrity was called into question by his failure to adhere to establish[ed] force protection standards and by having an inappropriate relationship contrary to expectations of an officer of his rank." (AR 5).

The Board of Inquiry formed in response to the negative report heard testimony from the 15-6 investigating officer, Major Gonzales, and eight other witnesses. (AR 144–51). This cast of witnesses was drastically different than the individuals whose interviews shaped the 15-6 investigation's findings. The 15-6 investigation involved discussions with Mrs. Gonzales, her driver, Ms. G., the Gonzales family's nanny, and other people with knowledge of Major Gonzales's day-to-day activities in Colombia. (AR 402–12). The BOI hearings instead focused on testimony from individuals with less direct knowledge of exact facts surrounding these incidents in Colombia but more knowledge about Major Gonzales's duties and performance in the service. (AR 146–51). The BOI determined by a "preponderance of the evidence," that Major Gonzales did not commit the misconduct alleged and should therefore be retained in service. (AR 152–53). The BOI stated that it found the 15-6 investigation to be "incomplete," and that the "[a]dditional evidence" provided by Major Gonzales "challenged each finding" in that investigation and "caused the balance of evidence" to favor him. (AR 152).

In the aftermath of the BOI decision, Major Gonzales mounted a challenge, first before the OSRB and then the BCMR, that the BOI proceeding had, by law, "absolved" him of any

misconduct, obligating the Army to remove the negative report from his files. (AR 940–42). The OSRB refuted this challenge, holding that (1) the BOI's decision is not binding on the OSRB and (2) the BOI's findings were unsupported by a preponderance of the evidence. (AR 127). The BCMR reviewed OSRB's decision and sustained that decision on two occasions, both times finding that Major Gonzales had not shown "any material error, inaccuracy, or injustice." (AR 950–51). That reasoning is the subject of the Court's analysis.

## II.   Analysis

To seek relief from the BCMR's decisions, a plaintiff must demonstrate that the decision was arbitrary, capricious, unsupported by substantial evidence, or contrary to applicable law. *Roth v. United States*, 378 F.3d 1371, 1381 (Fed. Cir. 2004). Although this standard of review invites a "searching and careful" inquiry into the facts, the ultimate standard of review is "a narrow one." *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416 (1971) (citations omitted). The Court must not reweigh the evidence or substitute its judgment for that of the military officials if reasonable minds can reach differing conclusions based on the evidence presented. *Heisig v. United States*, 719 F.2d 1153, 1156 (Fed. Cir. 1983); *Kirwin v. United States*, 23 Cl. Ct. 497, 505 (1991).

Major Gonzales argues that the BCMR's denial of his request to remove the negative report from his files and correct his retired grade was arbitrary, capricious, an abuse of discretion, and unsupported by substantial evidence. (Pl.'s Cross-MJAR at 28, ECF No. 14). Major Gonzales's main contention is that when the BOI's findings of fact establish that alleged misconduct did not occur, servicemembers are, by regulation, "absolved" of that misconduct. (*Id.* at 30). Although Army Regulation 600-8-24, pertaining to officer transfers and discharges, spans more than a hundred pages, Major Gonzales's position that the BOI has the power to absolve officers of alleged misconduct rests primarily on one single sentence within it: In discussing limitations on a BOI's powers to oversee elimination proceedings, subparagraph 4-4(d)(4) of that regulation states that "[t]he grounds for elimination in the earlier case may be joined with new grounds in the later case, provided the earlier elimination proceedings does not include a factual determination specifically *absolving* the member of the allegations then under consideration." Army Reg. 600-8-24, ¶ 4-4(d)(4) (emphasis added).

By Major Gonzales's logic, a later-in-time factual determination by a BOI that an alleged misconduct never occurred would supersede and nullify any contrary factual findings by other respective administrative authorities. (Pl.'s Cross-MJAR at 31–32 (arguing that "absolution need only entail a finding from the BOI" that the Government has failed to prove by a preponderance of the evidence that the misconduct occurred)). If Major Gonzales is correct, that would mean that the 15-6 investigation findings, as well as the decisions of the OSRB and BCMR which relied on those findings, are superseded. The Court disagrees that this sentence grants the BOI the rather broad and significant power to absolve officers of alleged misconduct.

As an initial matter, Major Gonzales fails to reconcile his reading of this sentence in subparagraph 4-4(d) with its surrounding context. Although Major Gonzales contends that the isolated sentence gives BOI the broad power to absolve an officer of any misconduct, paragraph 4-4 includes a clear preface indicating otherwise. Subparagraph 4-4(b) indicates that paragraph 4-4 *only* applies to cases in which an officer is being considered for elimination based on conduct

5

that has previously already been the "subject of administrative elimination proceedings," and, even then, only when that earlier "elimination proceeding" resulted in a final determination that the officer should be retained in the service. *See* Army Reg. 600-8-24, ¶ 4-4(b) ("no officer will be considered for elimination for reasons stated in paragraph 4–2 because of conduct that has been the subject of administrative elimination proceedings that resulted in final determination that the officer should be retained in the Service."). Subparagraph 4-4(b) further clarifies that the phrase "subject of elimination proceeding" refers only to those proceedings overseen by a BOI. *Id.* ("For purposes of this paragraph, an officer will be considered to have been the subject of elimination proceedings *only if allegations against the officer were acted on by a Board of Inquiry* convened under this chapter.) (emphasis added). In other words, the plain language of paragraph 4-4 narrows its application to cases in which a BOI is reviewing misconduct that has already been previously reviewed by another BOI. It is only against this background, that subparagraph 4-4(d) states that in the later-in-time BOI proceeding "[t]he grounds for elimination in the earlier case," (i.e., the earlier BOI proceeding), "may be joined with new grounds [], provided the earlier elimination proceedings does not include a factual determination specifically *absolving* the member of the allegations *then* under consideration." Army Reg. 600-8-24, ¶ 4-4(d) (emphasis added).

In simpler terms, subparagraph 4-4(d) absolution language has a far more modest aim than what Major Gonzales asserts. Instead of giving BOI the broad power to absolve officers of misconduct findings by separate non-BOI authorities, it merely prevents future BOIs from reconsidering a predecessor BOI's findings that already denied the grounds for the same misconduct. There is no dispute that Major Gonzales's misconduct has only been the subject of one BOI elimination proceeding. Therefore, Major Gonzales's case falls outside of the immediate reach of paragraph 4-4. Paragraph 4-4(d) only ensures that should a future BOI review these allegations anew it shall not depart from the current BOI's finding that Major Gonzales did not commit misconduct. Nonetheless, Major Gonzales urges the Court to view subparagraph 4-4(d) as a broad grant of power to BOI to absolve servicemembers of all misconduct determinations by other separate administrative authorities. The Court cannot endorse such an expansive reading.

The context of paragraph 4-4 indicates that the phrase "earlier elimination proceeding," refers only to an earlier BOI proceeding. Stretching the language of subparagraph 4-4(d) to hold that a BOI has the power to absolve officers of misconduct, not only for purposes of future BOI proceedings, but as to the findings of other duly formed and separate administrative bodies such as the OSRB, would render the express language in paragraph 4-4 that limits the application of that paragraph useless. *Cammarano v. United States*, 358 U.S. 498, 505 (1959) (rejecting construction of regulation that would render a phrase "pure surplusage"); *Johnson v. United States*, 157 Fed. Cl. 8, 18 (2021) ("This Court construes a regulation in the same way as a statute."); *Gen. Elec. Co. v. United States*, 92 Fed. Cl. 798, 812 (2010) ("The court cannot construe a regulation to render the provision meaningless . . .. Nor can [the court] construe a regulation without regard to its context." (citing *Griffin v. Sec'y of Veterans' Affairs*, 288 F.3d 1309, 1331 (Fed. Cir. 2002)). It would be ironic to read the language of subparagraph 4-4(d) in a manner that would expand BOIs powers in such a drastic way in relation to other administrative bodies when that subparagraph appears under a paragraph titled "limitations." *See* Army Reg. 600-8-24, ¶ 4-4, Title ("Limitations").

Instead, if the plain language of the regulations is to assist in determining the binding force of a BOI's final determinations, it is more reasonable for that guidance to appear in the paragraphs directly addressing BOIs final determinations. Here, paragraph 4-15, addressing "[c]onclusion of [BOI] hearing[s]," includes the direct edict with regards to negative reports (or OERS), stating that BOIs "may not recommend removal of documents such as OERs, article 15s, and Memoranda of Reprimand from an [officer's files]." Army Reg. 600-8-24, ¶ 4-15(b)(3). Cannons of construction dictate that specific prohibitions must prevail over general permissions. *Grossman v. United States*, 57 Fed. Cl. 319, 324 (2003). Therefore, even to the extent that language of paragraph 4-4 can be viewed as granting BOI the general permission to absolve officers of previous findings, that power cannot be exercised when it would require removal of negative reports or OERs, in direct violation of paragraph 4-15's specific guidance. *Insight Sys. Corp. v. United States*, 110 Fed. Cl. 564, 578 (2013) (specific guidance cannot be controlled or nullified by a general one).

Major Gonzales's argument that the BOI is empowered to absolve members of alleged misconduct creates yet another anomaly. The regulations pertaining to the Officer Special Review Board designate OSRB's appeal process as the "primary means" of correcting negative reports. Army Reg. 623-3, ¶ 6-4. OSRB can only remove a negative report from a servicemember's files when a "material error, inaccuracy, or injustice" is proven by "clear and convincing" evidence. *Id*. at ¶ 6-11(a). In reviewing negative reports based on 15-6 investigations, OSRB is required to apply the presumption of regularity and assume that the report is "administratively correct," and represents "the considered opinion and objective judgment," of the officials. *Id*. at ¶ 6-7(a). BOIs' findings, on the other hand, are to be established by a mere "preponderance of the evidence." Army Reg. 600-8-24, ¶¶ 4-6(a), 4-11, 4-15(b)(2). Given the high burden of proof required for OSRB to remove negative reports, it would defy logic to hold that a BOI's findings—only established by a preponderance of the evidence—require the OSRB to disregard other conflicting findings. If the Court embraces this oddity, a BOI proceeding will effectively serve as a backdoor to remove negative reports, by circumventing OSRB's high burden of proof for showing "material error, inaccuracy, or injustice." Army Reg. 623-3, ¶ 6-11.

Because BOI findings may not rise to the level of establishing facts by clear and convincing evidence, the legal structure undergirding BOI and OSRB inevitably allows for scenarios in which the two bodies will diverge in their factual findings. *See e.g.*, *Miller v. United States*, 119 Fed. Cl. 717, 724 (2015) ("[T]he OSRB discounted the findings of the 2004 investigatory board," as OSRB found those findings to be based on "insufficient evidence."). The regulations mandate that the OSRB only remove negative reports when the newly discovered contrary evidence is of a "strong and compelling nature," and not when the new evidence "merely [proves] the possibility of administrative error or factual inaccuracy." Army Reg. 623-3, ¶ 6-11(b). BOI findings established by a preponderance of the evidence may very well prove "the possibility of . . . factual inaccuracy," but OSRB must first independently review such findings to assess whether that factual inaccuracy is of a "strong and compelling nature." *Id.*

This is not an anomaly because the 15-6 investigations under review by OSRB and the BOI proceedings occupy non-overlapping boundaries: 15-6 investigations are designated "administrative fact-finding procedure[s]." Army Reg. 15-6, ¶ 1-5, Types of Investigations and Boards (Oct. 2, 2006); *see also* ¶ 1-6 (stating that the "primary function" of 15-6 investigations

"is to ascertain facts and to report them to the appointing authority"). 15-6 investigations and findings are not inevitably tied to any specific adverse administrative actions against servicemembers. *See id.* at ¶ 1-9(a) ("[I]f an investigation is conducted using the procedures of this regulation, the information obtained, including findings and recommendations, *may* be used in any administrative action against an individual []") (emphasis added).

Conversely, BOI's mandate goes beyond mere fact-finding; it is instead to oversee an adverse administrative action. *See* Army Reg. 600-8-24, ¶ 4-6. 15-6 investigations are not intended to provide a hearing for the interested person. Army Reg. 15-6, ¶ 4-3. On the other hand, BOIs exact mandate is to "give the officer a fair and impartial hearing" in order to determine "if the officer will be retained in the Army." Army Reg. 600-8-24, ¶ 4-6(a). It is only as a function of making a separation determination that the BOIs must also "establish[] and record[] the facts" of alleged misconduct. *Id.*; *see also*, ¶ 4-15(b)(2) ("The Board will render findings of fact, supported by a preponderance of the evidence, that describe specific relevant conduct by the Respondent in sufficient detail to support" retention or separation). Unlike the 15-6 investigation, a BOI's mandate will inevitably shape its approach to factual inquiries; this will focus the BOI's inquiry on evidence that would have particular importance in determining whether alleged misconduct resulted in "substandard performance of duty" or resulted in behavior otherwise "incompatible with military service." *Id.* at ¶ 4-6(a).

In contrast, for the purposes of OSRB proceedings, statements from people who may have observed the servicemember's performance before or after the period in question or testimony as to "outstanding performance," by the servicemember only constitute "[l]imited support." Army Reg. 623-3 ¶ 6-13(a)(2). Instead of generalized character evidence, supporting statements should focus on "first-hand knowledge of events and circumstances," that would refute the contents of the negative report. *Id.* at Figure 6-6, Example of a Format of a Third-Party Letter of Support; *see also* ¶ 6-11(d) (noting that third-party statements should "include *specific details of events or circumstances* leading to inaccuracies, misrepresentations, or injustice at the time the report was rendered," to be persuasive) (emphasis added).

Each party dedicates a considerable amount of time in their briefing to highlighting differences between BOI and 15-6 investigation proceedings as a means of calling into question the efficiency of either procedure. (*See* Def.'s MJAR at 27–28, ECF No. 11 (criticizing BOI's heavy reliance on "character evidence," from witnesses who had little to no knowledge of Major Gonzales's conduct in Colombia); Pl.'s Cross-MJAR at 32 (distinguishing BOI's use of "full and formal" investigations, which involve "a contested hearing in front of a panel of high-ranking officers[.]")). These differences in OSRB and BOI's purpose, structure, and function are all anticipated and endorsed by the regulatory language; the mere existence of these differences does not elevate either the OSRB or a BOI's review process over the other. The BCMR was therefore correct to find that the significance of BOI findings and recommendations was "limited" to making either the retention or elimination decision, and, therefore, does not have a direct bearing on the 15-6 investigation's findings. (AR 950).

The United States also argues that even if BOI has the power to absolve officers of misconduct, the BOI findings in this specific case are not adequately supported by a preponderance of evidence. (*See* Def.'s MJAR at 26; *see also* AR 127–29; AR 128 (OSRB's statement that "[t]he BOI's conclusions are not supported by a preponderance of evidence.")).

The Court need not address whether the BOI findings in this case met that standard because the Court holds that even when BOI findings do meet that standard, they cannot, "by regulation," absolve officers of alleged misconduct or bind the OSRB. (Pl.'s Reply at 1, ECF No. 16 (arguing that BOI can "by regulation" bind OSRB)). Instead, OSRB still maintains the independent power to determine if a BOI's findings rise to the level of disproving the negative report by "clear and convincing evidence." Army Reg. 623-3, ¶ 6-11(a)(2). The Court finds that BCMR's decision that the BOI findings had no bearing on the contested negative report is supported by substantial evidence; consequently, the Court refrains from conducting an in-depth review of the underlying facts reviewed by the BOI or re-weighing the evidence before the BOI. *Heisig*, 719 F.2d at 1157; *Harris v. United States*, 102 Fed. Cl. 390, 409 (2011) (the Court's duty is to determine whether military tribunals have "given fair consideration to each" claim and not to "reexamine and reweigh each item of evidence.").

Major Gonzales's final argument is that BCMR acted arbitrarily and capriciously when it sustained the OSRB decision because the OSRB had failed to "consider new, relevant evidence," that emerged during the BOI hearings and contradicted the 15-6 investigation's findings. (Pl.'s Cross-MJAR at 34). Major Gonzales points the Court to Army Regulation 623-3, paragraph 3-23(a) and (b) which prohibits the supervisors from (1) referencing incidents for which the member is absolved or (2) commenting on any investigation that can be deemed "incomplete." Army Reg. 623-3, ¶ 3-23(a). As Major Gonzales notes, the purpose of this regulation is to "prevent unverified derogatory information from being included in evaluation reports" and to "prevent unjustly prejudicial information from being permanently included," in officer files. *Id.* at ¶ 3-23(c). As stated, the Court rejects Major Gonzales's first argument that paragraph 3-23 applies because BOI, as a matter of law, absolved him of misconduct. Whether or not the new evidence before the BOI could have still served as persuasive evidence to convince the OSRB to revisit the negative report is a separate question.

One of the 15-6 investigation's findings was that Major Gonzales engaged in a long-term inappropriate relationship with a foreign national. (AR 408). To refute this finding, Major Gonzales provided the BOI with evidence that he claimed established that he was "separated from his spouse under Colombian law," and therefore the relationship should not have been considered inappropriate. (Pl.'s Cross-MJAR at 34; Pl.'s Reply at 16; AR 415–35). The United States asserts that the OSRB was correct to sustain the negative report even in light of this new evidence. (Def.'s Resp. at 5, ECF No. 15). In particular, the United States argues that the record before OSRB still contained evidence that undermined the weight of this new evidence and that the BOI proceeding never addressed or resolved that conflict. (Def.'s MJAR at 5–7). As the United States asserts, the record still indicated that Major Gonzales was married in the United States. (AR 642). There is also evidence in the record before OSRB indicating that Major Gonzales had named Mrs. Gonzales as his "spouse" and designated her as a life insurance beneficiary three weeks after the date of the purported separation under Colombian law. (AR 1041–43). Major Gonzales's officer record briefs continued to reflect that he was married. (AR 52; 112). In fact, when Mrs. Gonzales originally contacted the Army to discuss Major Gonzales's threatening behavior, she noted that Major Gonzales's harassment began when she asked for a divorce which Major Gonzales vehemently opposed. (AR 600). The BOI proceedings did not entail extensive discussions with the individuals at the center of the events that occurred in Colombia, but the 15-6 investigation did. (*See e.g.*, AR 614 (interview with Mrs. Gonzales's driver stating his belief that Major Gonzales and Mrs. Gonzales were married at the time)).

Therefore, OSRB had to reconcile the import of this new evidence with the fact that the 15-6 investigation had established that people surrounding Major Gonzales in Colombia "thought that he was married during the relevant time," and this local knowledge is what created the appearance of inappropriate behavior by Major Gonzales. (*See* Def.'s Reply (collecting statements from individuals familiar with Major Gonzales's association with Ms. G. who all also believed that Major Gonzales was married at the time)). Juxtaposing this evidence with the evidence that was presented to the BOI demonstrates, at best, that OSRB could have been faced with "the possibility of . . . factual inaccuracy." Army Reg. 623-3, ¶ 6-11(b). That does not constitute evidence of a "strong and compelling nature," enough for the OSRB to remove the negative report. *Id*.

Furthermore, the Court cannot now cast judgment on how much weight should have been assigned to the documents presented by Major Gonzales to the BOI. It is the Court's well-established practice to avoid reweighing evidence already reviewed and assessed by the Army. *Johnson v. United States*, 97 Fed. Cl. 267, 270 (2011) ("In reviewing a correction board's decision, the Court does not sit as 'a super correction board.'") (citing *Skinner v. United States*, 594 F.2d 824, 830 (Ct. Cl. 1979)); *see also Meyer v. United States*, 127 Fed. Cl. 372, 381 (2016) (stating that the Court's role in reviewing admirative decisions by the Army is not to "reweigh the evidence"). The Court may grant Major Gonzales the argument that evidence of separation under Colombian law casts *some* doubts on the 15-6 investigations findings; but even in that case, overturning the BCMR's decision would be out of line with the Court's standard of review that dictates upholding BCMR's decision when there is "substantial evidence" supporting it. *Melville v. United States*, 231 Ct. Cl. 776, 779 (1982) ("Plaintiffs' third point, that there is ample evidence to show that the [decision] was wrong, also is to no avail. The review standard of this court is, in fact, the reverse. The [decision] must be upheld if there is substantial evidence to show that it was right.").

The journey to this destination entails nothing short of a dizzying trip through a labyrinth of administrative procedures. It might be nearly impossible for Army officers to emerge from the lengthy, multifarious, and entangling procedures intended to investigate and resolve allegations of serious misconduct without, at some point, eliciting two inconsistent conclusions from two separate authorities. Such disagreements are part and parcel of a system that distributes the power to investigate and discipline military members among different boards and bodies to avoid prejudicial treatment. Major Gonzales's insistence that the Board of Inquiry and the Officer Special Review Board must march in lockstep contravenes the Army regulations' intended separation between the two authorities. The Officer Special Review Board and the Correction Board found the Board of Inquiry's findings unconvincing and held that, despite the inconsistent conclusion reached by that body, the negative report was entitled to the presumption of regularity and did not contain a material error. Continued orderly management of the Army's internal procedures requires that the Court refrain from disturbing the Army's findings just because there is a "possibility of drawing two inconsistent conclusions from the evidence." *See Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966); *Pope v. United States*, 16 Cl. Ct. 637, 641 (1989) (the Court should not substitute its judgment for that of the BCMR merely because "reasonable minds could reach differing conclusions."). Therefore, the Court sustains the BCMR's decision.

### III.    Conclusion

Accordingly, the Court **GRANTS** the United States' motions for judgment on the administrative record, (ECF No. 11), and **DENIES** Major Gonzales's cross-motion for judgment on the administrative record, (ECF No. 14). The Clerk is **DIRECTED** to enter judgment in favor of the defendant.

**IT IS SO ORDERED.**



s/      David A. Tapp
DAVID A. TAPP, Judge